DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEPARTMENT OF CHILDREN AND FAMILIES** and **GUARDIAN AD LITEM,**
Appellants,

v.

**K.R.,** the father,
Appellee.

No. 4D2025-1194

[September 10, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Laurie E. Buchanan, Judge; L.T. Case No. 47 2024 DP 000056.

Andrew Feigenbaum of Children's Legal Services, West Palm Beach, for appellant Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Caitlin E. Burke, Senior Attorney, Appellate Division, Statewide Guardian ad Litem Office, Tallahassee, for appellant Guardian ad Litem.

No appearance for appellee.

MAY, J.

The Department of Children and Families ("DCF") appeals a final paternity judgment. It argues the trial court denied the DCF due process in ruling on the paternity petition without providing notice and an opportunity to be heard. We agree and reverse.

- *Facts*

In a tragic accident, the child's mother and her paramour were killed in an automobile crash. They were returning from picking up the child's brother, who lived out-of-state with the legal father (S.T.) of both boys. Both children were in the car at the time of the accident and sustained injuries.

When the child's brother was released from the hospital following the accident, S.T. came to Florida and took custody of the brother. But S.T. refused to take custody of the child, claiming he was not the child's "biological" father

even though considered his "legal" father because he was married to the mother at the time of the child's birth.

The trial court found probable cause to shelter the child. The DCF placed the child with the sister of his mother's deceased paramour because she was very close to the child, and the child requested to live with her.

Subsequently, the child's putative father K.R. submitted to a DNA test to prove paternity. The results were certified and showed the 99.996% probability of paternity. K.R. advised he was incarcerated when the child was born and was unable to sign the birth certificate.

On December 2, 2024, the DCF petitioned to have the child adjudicated dependent based his mother's death and the legal father S.T.'s abandonment of him. On December 4, 2024, the DCF filed K.R.'s DNA test results, showing K.R. to be the child's biological father.

When S.T. failed to appear for the adjudicatory hearing on February 10, 2025, the trial court adjudicated the child dependent. On February 13, 2025, the DCF filed a case plan indicating adoption. The case plan asserted that K.R. had been released from custody shortly after the child's birth but had minimal visitation with the child. It also asserted K.R. had not reached out for visitation or placement with the child following the DNA results.

On February 21, 2025, K.R. filed a paternity petition. K.R. never noticed the petition for hearing.

On February 26, 2025, the DCF filed S.T.'s (the legal father's) surrender of his parental rights to the child. On March 10, 2025, at the case plan acceptance hearing, K.R. appeared with his attorney.

The trial court accepted S.T.'s written surrender of his parental rights to the child, which also indicated the child was to be placed in the DCF's custody for adoption. K.R.'s attorney then requested the court to declare K.R.'s paternity.

DCF objected to the trial court conducting a hearing on the paternity issue both on procedural grounds and lack of notice. It requested a continuance of the paternity matter. The trial court indicated the child needed permanency. Over the DCF's objection, the trial court entered the final paternity judgment establishing K.R. as the child's legal father.

The DCF moved for rehearing of the paternity judgment, again arguing its due process rights had been violated because the paternity petition had not been noticed to be heard at the case plan acceptance hearing. The DCF argued the matter should have been heard in the family division, and that the DCF was entitled to investigate the legitimacy of K.R.'s DNA testing. The trial court denied

the motion for rehearing.

From the final paternity judgment, the DCF now appeals.[1]

- ### *The Analysis*

We have de novo review of a due process violation claim. *See K.R. v. Dep't of Child. & Fams.*, 368 So. 3d 986, 990 (Fla. 4th DCA 2023) (quoting *I.T. v. Dep't of Child. & Fams.*, 338 So. 3d 6, 9 (Fla. 3d DCA 2022)).

The DCF argues the trial court violated its right to due process when it adjudicated K.R. as the child's legal father without proper notice and an opportunity to be heard.

> Chapter 39 "provide[s] judicial and other procedures to assure due process through which children, parents, ... and other interested parties are assured fair hearings by a ... respected court ... and the recognition, protection, and enforcement of their constitutional and other legal rights." § 39.001(1)(*l*), Fla. Stat. (2014). Procedural due process requires "'fair notice and a real opportunity to be heard.'"

*Dep't of Child. & Fams. v. T.S.*, 154 So. 3d 1223, 1226 (Fla. 4th DCA 2015) (citations omitted) (quoting *C.K. v. Dep't of Child. & Fam. Servs.,* 88 So. 3d 975, 977 (Fla. 2d DCA 2012)).

"The parent or legal custodian of the child, **the attorney for the department**, **the guardian ad litem**, the foster or **preadoptive parents**, and all other parties and participants shall be given reasonable notice of all proceedings and hearings provided for under this part." § 39.502(17), Fla. Stat. (2024) (emphasis added).

Here, there was NO notice and NO meaningful opportunity to be heard on K.R.'s paternity petition. In fact, K.R. filed his paternity petition on February 21, 2025, only seventeen days prior to the case plan acceptance hearing. But he never noticed the petition for hearing. Simply put, he failed to provide the required notice.

Nevertheless, the trial court accepted S.T.'s surrender of parental rights and declared K.R. to be the child's legal father. The trial court did so by asking K.R. two questions: (1) are you the biological father of the child; and (2) do you want to be the child's legal father. The DNA test was never admitted into evidence. The DCF objected to the division of the court hearing the matter, the procedure employed, and the lack of notice. Over those objections, the trial court proceeded full speed ahead.

---

[1] The guardian ad litem has joined the DCF in its appeal and its brief.

Not only did the DCF object, but also challenged the DNA test results without any formal admission of those results. The DCF asked the trial court to recall the case and again objected to the summary disposition of the paternity petition.

Notice and an opportunity to be heard are the hallmarks of due process. *T.S.*, 154 So. 3d at 1226. Courts have consistently reversed orders when the losing party has been denied due process. *See, e.g.*, *L.B. v. Dep't of Child. & Fams.*, 303 So. 3d 973, 974 (Fla. 4th DCA 2020); *see also Dep't of Child. & Fams. v. W.H.*, 109 So. 3d 1269, 1270 (Fla. 1st DCA 2013) (reversing reunification order because the DCF was not properly notified that reunification would be addressed at the hearing); *Fla. Dep't of Child. & Fams. v. R.A.*, 980 So. 2d 578, 579–80 (Fla. 3d DCA 2008) (reversing reunification order because the DCF was not notified that reunification was a possible outcome of the hearing).

While it was anticipated that S.T.'s surrender and the termination of his parental rights would be heard at the case plan acceptance hearing, no one was on notice that the court would adjudicate the paternity petition. This is particularly important because the case plan and S.T.'s surrender contemplated adoption by the family sheltering the child.

At the time of the hearing, the child had been living with his caretakers, who wished to adopt him. DCF was not on notice that the paternity issue would be addressed and objected to the summary procedure employed by the court. The DCF asked for additional time to properly address the paternity issue, but the trial court overlooked those objections and the circumstances of the child's placement.

The trial court abruptly gave K.R. the fundamental right to make decisions concerning the care, custody, and control of the child, whom K.R. barely knew. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). The violation of the DCF's due process rights also led to the trial court's failure to consider the child's best interests.

Because the trial court granted K.R.'s paternity petition over the DCF's objection and without providing the DCF with notice and a meaningful opportunity to be heard, we reverse.

*Reversed and remanded for further proceedings consistent with this opinion.*

KUNTZ, C.J., and WIGAND, CHRISTOPHER, Associate Judge, concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**